**RISNER & GRAHAM**  #00089200
Attorneys at Law
100 North Stone Avenue, Suite 901
Tucson, Arizona 85701-1620
(520) 622-7494
**WILLIAM J. RISNER, ESQ.**
State Bar Number: 002257
Pima County Bar Number: 48228
*bill@risnerandgraham.com*
**KENNETH K. GRAHAM, ESQ.**
State Bar Number: 007069
Pima County Bar Number: 21588
*kk@risnerandgraham.com*
*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **BASILEA MENA,**<br><br>Plaintiff,<br><br>v.<br><br>**ROBERT MASSIE,**<br><br>Defendants. | NO. 17-CV-368-DCB<br><br>**JOINT CASE MANAGEMENT PLAN**<br><br>Assigned to:<br><br>David C. Bury |

Pursuant to the Court's Order of August 15, 2017, the parties file this Case Management Plan.

1. The names and telephone numbers for counsel who are appearing at the Pretrial Scheduling Conference.

   **Counsel for Plaintiff-William J. Risner 520-622-7494.**

   **Counsel for Defendant-Viola Romero 520-837-4220.**

{A0174217.doc/}

2. The nature of the case, setting forth in brief statements the factual and legal bases for Plaintiff's claims and Defendant's defenses, and the relief sought.

**Plaintiff's Claims**

On or about June 22, 2016, as Officer Robert Massie #49995 and Sgt. Pettey #51926 were talking in a bank parking lot they heard Basilea Mena and Jacob Tellez arguing while standing in the median of East Speedway Blvd. just east of its intersection with North Alvernon Way. Without reasonable suspicion that criminal activity had occurred or was ongoing the officers jumped into their patrol cars and stopped their patrol vehicle on Speedway Blvd. facing southwest at a 45 degree angle with the emergency lights on.

Officer Massie approached Mr. Tellez who was leaning against a palm tree. Officer Massie asked him "what was going on" and Mr. Tellez responded indicating a simple lovers quarrel. Despite that information the officers, now joined by Sgt. Pettey decided to investigate further "to determine what's going on or to determine if there's nothing going on whatsoever." Ms. Mena was standing next to Mr. Tellez. No indication of any criminal activity was present yet Ms. Mena and Mr. Tellez were detained in violation of their Fourth Amendment rights.

The officers "separated" Mr. Tellez and Ms. Mena. Mr. Tellez was asked for identification and he handed them his drivers license and identification card.

Ms. Mena was also asked for "identification" and requested from the officers an explanation for why she was required to provide identification documents. Sgt. Pettey was initially asking for identification from Ms. Mena. None of the officers told Ms. Mena that she was not required to provide identification nor was she told that she was only required to provide them with her full name.

{A0174217.doc/}

As she was being asked for identification she had her wallet in her hand that contained her identification. The officers understood that her identification was in her hand. Ms. Mena wanted to know, and specifically asked why, she was required to show the officers her written identification. Instead of answering her lawful question Officer Massie and Officer Little, who had arrived at the scene, grabbed Ms. Mena by her arms to handcuff her and shoved her face first into the palm tree next to her causing cuts and bleeding punctures to her face and shoulders.

The Tucson Police General Orders track the constitutional requirements for "the police to ensure that citizens' Fourth Amendment rights are honored and not violated. It provides that officers shall scrupulously observe constitutional guidelines..." The detention of Ms. Mena and Mr. Jacob Tellez was not founded on reasonable suspicion that they were involved in criminal activity.

Officer Massie and the other officers present were required to answer Ms. Mena's reasonable question. She had asked why she was required to show them her identification. Not only was it a reasonable question but the only answer consistent with the constitution would have been that she was not required to show them any identification.

Instead, Ms. Mena was brutally punished for simply asking a question. She was seized in violation of the Fourth Amendment to the United States Constitution for exercising her First Amendment rights.

**Defendant's Defenses**

It is unclear from Plaintiff's statement above what Plaintiff's claims are and the factual and legal bases for Plaintiff's claims. Defendant, must therefore anticipate all potential claims even those not articulated in the complaint and responds as follows:

    **A.**    **Summary of the Facts that Supports Each Defense**

    On June 22, 2016, at approximately 12:15 a.m., Officer Massie and Sergeant

{A0174217.doc/}

Pettey were parked at the Chase bank at Speedway and Swan when they heard yelling and screaming coming from the median of the intersection. They went to the median and as they got closer they observed a male crying, emotional distraught, and leaning on a palm tree. A female[1] was standing next to him and holding his arm. They did not know if this was a domestic violence incident so they wanted to investigate further. Officer Massie asked the male and female for identification and the male (Jacob Tellez) provided his driver's license but the female refused.

Sergeant Pettey asked the female to move away from the male, so she could be interviewed separately, but the female refused. Sergeant Petty observed the female appeared to be under 21 years of age and she had watery/bloodshot eyes, slurred speech, and a strong odor of intoxicants on her breath. Sergeant Pettey explained to the female that she and Officer Massie were conducting an investigation, the reason for the investigation, and that she needed her to identify herself or she would be subject to arrest. The female was uncooperative and told Sergeant Pettey that she was not going to provide her name even after being asked to do so at least three times. The female also refused to move away from the male.

Officer Massie observed that the female refused to identify herself to Sergeant Pettey. Officer Massie made the decision to handcuff her due to her refusal to step away Tellez and her refusal to give the officers her name.

Officer Massie informed the female she was under arrest for refusing to give them her name under A.R.S. § 13-2412(A). The officers asked her to put her hands behind her back and she refused. The officers attempted to handcuff her and she resisted and pulled away, as she pulled away and struggled, her face and shoulders

---

[1] Later identified as Plaintiff "Basilea Mena."

{A0174217.doc/}                           4

brushed against a palm tree causing abrasions to her face and upper arms. Officer Massie did not push her or use any force in applying handcuffs. Her injuries were self-inflicted by her attempting to avoid being handcuffed. The police took photos of her scratches and Officer Little drove her home since it was late at night and they did not feel it was safe for her to walk home alone.

**B.      Each Defense, Relevant Facts, and Legal Theories**

(1)     Plaintiff's Complaint Fails to State a Claim

Plaintiff's allegations are conclusory and provide factual or legal basis for a cognizable constitutional violation.

(2)     No Constitutional Violation.

(a)     Sgt. Petty and Officer Massie had reasonable suspicion.

Investigative detentions must be supported by "reasonable suspicion" based on articulable facts that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Courts reviewing the legality of investigatory detentions "must look at the 'totality of the circumstances' of each case to see whether the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Here, the police witnessed two people yelling and screaming loudly in the median of a street. As they got closer they observed a male crying, upset and agitated. In Arizona, the crime of domestic violence includes disorderly conduct, assault, and threatening or intimidating, among other crimes if the victim and defendant reside together or are married or have a child in common. *See* A.R.S. 13-3601(A)(1-3). The female appeared to be under the influence of alcohol and under the legal drinking age. The female refused police officers' reasonable requests to provide her name and to move away from the male hindering their ability to investigate. The totality of these circumstances justified a

{A0174217.doc/}                                  5

brief investigative detention in order to ascertain whether a crime had occurred.

    (b)    Sgt. Petty and Officer Massie had lawful authority to ask Mena to give them her name.

A person detained under this section shall state the person's true full name..." A.R.S. § 13-2412.

    (c)    Officer Massie had probable cause to arrest Mena.

Arizona state law provides "[i]t is unlawful for a person, after being advised that the person's refusal to answer is unlawful, to fail or refuse to state the person's true full name on request of a peace officer who has lawfully detained the person based on reasonable suspicion that the person has committed, is committing, or is about to commit a crime. A.R.S. § 13-2412. Arizona state law further provides that "[a] person shall not willfully fail or refuse to comply with any lawful order or direction of a police officer invested by law with authority to direct, control or regulate traffic." A.R.S. § 28-622. The female (Mena) refused to tell the officers her name and to comply with a simple request to move away from the male, Tellez.

    (3)    Qualified Immunity

Officer Massie's actions were reasonable and he is entitled to qualified immunity.

    (4)    Officer Massie did not physically injure Plaintiff Mena.

Plaintiff Mena sustained injuries to herself when she pulled away from the police officers and scratched her arms and face on the palm tree. There is no evidence that Officer Massie used excessive force in handcuffing Mena.

    (5)    Plaintiff Mena is not entitled to damages for attorney fees for defending herself in her criminal trial.

There is no legal authority that permits a civil plaintiff to recover her criminal attorney's fees for representing and defending her in a criminal case.

1　　　(6)　Defendant is entitled to attorney fees.

2　This is a baseless lawsuit and City may be entitled to attorney's fees under 42
3　U.S.C. § 1988(b).

4　　　3. The factual and legal issues genuinely in dispute and whether they can be
5　　　　narrowed by stipulation or motions.

### Plaintiff

**Defendant agrees he did not ask plaintiff for her name and address nor did he hear any other officer so request. Defendant may claim plaintiff hurt herself.**

### Defendant

**Defendant does not understand the factual or legal significance of Plaintiff's statement above.**

### Defendant's Disputed Factual/Legal Issues

- Defendant disputes Mena's claim that her constitutional rights were violated.
- Defendant disputes Mena's claim that he caused her injuries.
- Defendant disputes Mena's claim that he used excessive force in handcuffing Mena.
- Defendant disputes Mena's claim that she is entitled to damages.
- Defendant disputes Mena's claim that she is entitled to reimbursement for her criminal defense attorney's fees.

Defendant Believes Parties Could Stipulate to the Following Facts:

- On June 22, 2016, at approximately 12:15 a.m., Sergeant Petty and Officer Massie heard people yelling and screaming on a roadway median near Speedway and Swan.
- Sergeant Petty and Officer Massie approached the median and saw a

{A0174217.doc/}　　　　　　　7

- male leaning on a palm tree, sobbing and emotional upset, and a female next to him holding his arm.
- A.R.S. § 13-2412 states that "A person detained under this section shall state the person's true full name, but shall not be compelled to answer any other inquiry of a peace officer."
- Officer Massie arrested the female (later identified as "Mena") for violating A.R.S. § 13-2412.

4. The jurisdictional basis of the case, citing specific statutes.

   **This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. §1331 and/or 28 U.S.C. § 1343(a)(3), and/or 28 U.S.C. § 1367 and is one which was removed to this Federal Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441. Plaintiff is asserting claims against Defendant under 42 U.S.C. § 1983, including violations of the Fourth Amendment to the United States Constitution.**

5. The parties, if any, that have not been served or any joinder of additional parties.

   **Defendant has been served.**

6. The names of parties not subject to the Court's jurisdiction.

   **None.**

7. Whether there are dispositive or partially dispositive issues to be decided by pre-trial motions.

   **Plaintiff**

   **A motion for summary judgment by the Plaintiff may be appropriate.**

**Defendant**

**It is likely that the Defendant will file a dispositive motion on the issue of no constitutional violation and qualified immunity.**

8. Whether the case is suitable for reference to arbitration, to a master, or to a magistrate trial.

**Plaintiff**

**Yes.**

**Defendant**

**Defendant Officer Robert Massie does not think this case is suitable for arbitration, a master, and does not consent to a United States Magistrate Judge**.

9. The status of related cases pending before other judges of this court or before other courts.

**None.**

10. The dates(s) of the parties' responses to the MIDP discovery requests, and a discussion of the parties' compliance to date with the MIDP, including: a description of the Rule 26(f) discussions of the mandatory initial discovery responses and the resolution of any limitations invoked by any party in its response, as well as any unresolved limitations or other discovery issues; the initial and supplemental responses and any other discovery requests, objections, and responses involved in any unresolved limitations or discovery issues.

**Plaintiff**

**Plaintiff provided defendant with her Fed. Rule 26.1 disclosure**

{A0174217.doc/}                            9

**statement on September 1, 2017 and Responses to the Court's MIDP requests on September 8, 2017.**

**Defendant**

**Defendant served its Mandatory Initial Discovery to Plaintiff on September 1, 2017 pursuant to Court Order 17-08.**

11. Proposed deadlines for discovery, which shall also be the deadline for final supplementation of MIDP responses, filing dispositive motions, and a proposed pre-trial order statement.

**Plaintiff**

**90 days should be sufficient or by December 30, 2017.**

**Defendant**

**Defendant would like to conduct depositions and secure a police procedures expert on the case.**

    **a.    Discovery/Final Supplementation of MIDP responses March 12, 2018**

    **b.    Dispositive Motions April 30, 2018**

    **c.    Proposed Pre-Trial Order Statement May 14, 2018, if no dispositive motions filed**

12. Estimated date that the case will be ready for trial and the estimated length of trial.

**Plaintiff**

**Case should be ready for trial by February 1, 2017 and trial should take one day.**

**Defendant**

**Depending upon whether motions for summary judgment have been ruled on or not, the case should be ready for trial on June 2018, for a 3-4 day trial.**

**13. Whether a jury trial has been requested.**

**Yes.**

14. The prospects for settlement, including whether any party wishes to have a settlement conference with another judge or magistrate and how settlement efforts can be assisted.

**<u>Plaintiff</u>**

**Plaintiff made an offer of Judgment but has not received no response.**

**<u>Defendant</u>**

**There is no record that Plaintiff made or filed an "Offer of Judgment" with this Court.  There is no factual or legal basis to settle this case at this time.  Defendant does not expect to make any settlement offers.**

15. In class actions, the proposed dates for class certification proceedings and other class management issues. Such certification will result in the case being reassigned to the complex track for case management purposes pursuant to L.R.Civ. 16.2.

**Not applicable.**

16. Any unusual, difficult, or complex problems affecting the conduct of the case.

**None.**

17. Any other matters which counsel feel will aid the Court in resolving this dispute in a just, expeditious, and efficient manner.

**None.**

{A0174217.doc/}                       11

| | |
|---|---|
| **RISNER & GRAHAM** | **Tucson City Attorney** |
| */s/ William J. Risner* | */s/ Viola Romero with permission* |
| _____ | _____ |
| William J. Risner<br>Attorneys for Plaintiff | Viola Romero<br>Attorneys for Defendant |

## CERTIFICATE OF SERVICE

This is to certify that on September 18, 2017 a true and correct copy of Plaintiff's Case Management Plan was served by email and regular U.S. mail on the counsel of record for all parties to the action below in this matter as follows:

**Tucson City Attorney**
Viola Romero, Principal Assistant City Attorney
City Attorney's Office
P.O. Box 27210
Tucson, AZ 85726-7210
*Attorney for Defendant*

DATED this 18th day of September, 2017.

**RISNER & GRAHAM**

By: */s/ William J. Risner*
William J. Risner
*Attorneys for Plaintiff*

{A0174217.doc/}                    13