**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Basilea Mena,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Robert Massie,<br><br>　　　　Defendant. | No. CV-17-00368-TUC-DCB<br><br>**ORDER** |

On January 8, 2019, this Court granted in part and denied in part the Defendant's Motion for Summary Judgment and set the excessive use of force claim against Defendant Massie for trial. On January 18, 2019, the Defendant filed a Motion for Reconsideration based on new legal authority, *City of Escondido, Calif. v. Emmons,* 2019 WL 113027 (January 7, 2019). In *Escondido,* the Court framed its holding as follows:

> As we have explained many times: "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, . . . 138 S.Ct. 1148, 1152 . . . (2018) (per curiam) (internal quotation marks omitted); *see District of Columbia v. Wesby*, . . . 138 S.Ct. 577, 593 . . . (2018); *White v. Pauly*, . . . 137 S.Ct. 548, 551 . . . (2017) (per curiam); *Mullenix v. Luna*, . . . 136 S.Ct. 305, 308 . . . (2015) (per curiam).

*Id.* at *2. This Court considered *Kisela* when ruling on Defendant's summary judgment motion. Order (Doc. 37) at 3.)

Defendant asks this Court to reconsider its application of "cases which are black and white, regardless of differing factual predicates, where any force used is constitutionally unreasonable, if there is no need for any use of force." *Id.* at 6. The

Defendant argues that as a matter of law under *Escondido* factual dissimilarities mean there can be no clearly established constitutional right, and the Court should have granted summary judgment for Massie based on the doctrine of qualified immunity.

This Court found the facts as alleged by the Plaintiff reflected a circumstance where absolutely no force was justified against her. In other words, Defendant Massie had no reasonable basis for grabbing Plaintiff's wrist and jerking her about, which she alleged resulted in her hand being pinched, and no need to push her face-first into the palm tree and handcuff her. As noted by the Defendant, the Court *sua sponte* cited several cases reflecting that the law is clearly established: that any degree of force is constitutionally unreasonable, if there is no need for any use of force at all. On reconsideration, the Defendant challenges the cases relied on by the Court because one, *P.B. v. Koch*, 96 F.3d 1298, 1303–04 & n. 4 (9th Cir.1996), involves the use of force by a school principal and the other two cases, *Felix v. McCarthy*, 939 F.2d 699, (9th Cir. 1991) and *Meredith v. Arizona*, 523 F.2d 481, 482-84 (9th Cir.1975), involve use of force by prison guards.

The Court agrees that generally diversity of facts would preclude a finding that there is clearly established law and would warrant summary judgment under the doctrine of qualified immunity. Specificity is especially important in the Fourth Amendment context because it is sometimes difficult for an officer to determine how the legal doctrine of excessive force will apply to the factual situation the officer confronts. Use of excessive force, especially, depends very much on the facts of each case. And, hence police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue in the case. *Escondido,* 2019 WL 113027 * 2 (citing *Kisela,* 138 S. Ct. at 1153.)

While *Escondido* is not new law, it does offer a good example of the type of analysis required to avoid the risk of describing clearly established law "at a high level of generality by saying only that 'the right to be free of excessive force' was clearly established. *Id.* at *3. The Court explained that the appellate court "should have asked whether clearly established law prohibited the officers from stopping and taking down a man in these

circumstances," referring to the specific facts of the case. *Id.*

In *Escondido,* police had received a 911 call about a domestic violence incident where children were present and reportedly crying for help. When officers attempted to conduct a welfare check, they knocked, and no one answered, but a side window opened and officers spoke to a woman and attempted to get her to open the door. A man inside told her to move away from the window, and she did. A few minutes later, a man exited the apartment. Officers told him not to close the door, but he did and tried to brush past police. Officer Craig stopped the man, took him quickly to the ground, and handcuffed him. The Supreme Court found error by the appellate court's reliance on *Gavelet-Blondin v. Shelton,* 728 F.3d 1086, 1093 (9th Cir. 2013), a case involving the use of force by police against individuals engaged in passive resistance.

In *Gavelet-Blondin,* police arrived to conduct a welfare check of an elderly man, Jack, suspected of being in the process of committing suicide. It was reported that he owned a gun and might have it with him. When officers arrived, Jack was in his car with the exhaust hose running from the exhaust pipe into the car window. After some hesitation, Jack complied with directives to get out of the car but then refused to show his hands. For officer safety reasons, police tasered him twice before successfully restraining him. His neighbors, the Blondins, hearing the commotion, went outside and into Jack's back yard and saw officers holding him on the ground. Approximately 37 feet away and separated by the car from where police were holding Jack on the ground, Mr. Blondin called out, "what are you doing to Jack?" Police yelled at Mr. Blondin, "get back" and "stop," both of which he did—taking about two steps back and stopping. While screaming "get back," Sgt. Shelton ran towards Mr. Blondin with his taser extended and began to warn Blondin that he would be tased if he did not leave, but fired his taser before he finished the warning. Sgt. Shelton tased Blondin in dart mode, knocking him down and causing excruciating pain, paralysis, and loss of muscle control. Mr. Blondin was disoriented and weak, and began to hyperventilate. Sgt. Shelton asked Blondin if he "wanted it again" and then turned to Ms. Blondin and warned, "You're next." Mr. Blondin was arrested and charged with

obstructing a police officer, a charge that was ultimately dropped. *Id.* at 1089-90.

In *Gavelet-Blondin,* the court found police had used excessive force and turned to the question of qualified immunity. Citing numerous cases, the court found it was clearly established prior to 2008 that the application of non-trivial force for engaging in mere passive resistance was excessive. *Id.* at 1093 (citations omitted). Defendant argued, however, that the law was not clearly established until 2010 when tasers in dart mode were found to be an intermediate level of force. The court discussed the facts of the taser cases and found they were based on behavior which could have been perceived as threatening or resisting. *Id.* at 1094. The court evaluated the situation with Sgt. Shelton and Blondin—who, unlike Bryan[1], Brooks and Mattos[2] had no connection to the underlying crime—committed no act of resistance. He took no affirmative step to violate an officer's order (Bryan), did not physically resist officers (Brooks), and neither made physical contact with an officer nor tried to interfere with efforts to arrest a suspect (Mattos). The court found that Blondin's momentary failure to move farther than thirty-seven feet away from officers who were arresting his neighbor, after merely inquiring into what those officers were doing, could hardly be considered resistance. *Id.* at 1094. As such, the law was clearly established that when there is no resistance, non-trivial force in response to passive bystander behavior would be unconstitutionally excessive. The court found that it was well known in 2008, without it being clearly established in law until 2010 that a taser in dart mode was more than trivial force. The court concluded that Sgt. Shelton was not entitled to qualified immunity. *Id.* at 1096.

Coincidentally, *Gavelet-Blondin* is relevant for Mena's case. The court in *Gavelet-Blondin* found that the right to be free from non-trivial force for engaging in passive resistance was clearly established prior to 2008. Arguably, the facts in this case, as alleged by Mena, reflect that at most she engaged in passive resistance by not immediately tendering her identification and asking what she and her boyfriend did wrong? It is equally

---

[1] *Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010).
[2] *Brooks v. City of Seattle* and *Mattos v. Agarano*, reviewed jointly 661 F.3d 433 (9th Cir. 2011).

- 4 -

well established that "handcuffing substantially aggravates the intrusiveness" of a detention. *Washington v. Lambert*, 98 F.3d 1181, 1188 (9th Cir.1996); *United States v. Bautista,* 684 F.2d 1266, 1289 (9th Cir. 1982). "Circumstances which would justify a detention will not necessarily justify a detention by handcuffing. More is required." *Meredith v. Erath*, 342 F.3d 1057, 1062 (9th Cir. 2003). Handcuffing is more than non-trivial force.

In *Meredith v. Erath*, 342 F.3d 1057, (9th Cir. 2003), the court considered circumstances where there was no officer safety risk, no attempt to flee, the investigation was into nonviolent offenses (income tax related crimes,) and she objected vociferously to the search and "passively resisted." The court concluded that the need for force, if any, was minimal at best—and police violated the Fourth Amendment by grabbing her by the arms, throwing her to the ground, and twisting her arms while handcuffing her.

To the extent that the Court's previous analysis was deficient under *Escondido,* the Court supplements it here. The relevant facts alleged by the Plaintiff reflect circumstances amounting to passive resistance at best and a need, if any, for no more than minimal force. It does not matter that Officer Massie is a police officer and the defendants in the cases relied on by the Court in denying qualified immunity were a principal and prison guards. Plaintiff alleges that she and her boyfriend were fighting but both were calm and cooperative after police arrived and began questioning them. Both readily answered questions. She did not touch either officer. When officer Massie asked her to produce her identification she started to comply, then paused, and asked: "What did we do wrong?" The relevant circumstances as alleged by the Plaintiff are that there were no officer safety issues, no risk of flight concerns, the offense was minor and non-violent (disturbing the peace), and if she resisted at all, it was passive resistance by way of asking a question. Under these circumstances, the law is clearly established that any degree of force is unconstitutional, if there is no need for any use of force at all. Likewise, the law is equally well established that it is an excessive use of force to use non-trivial force (handcuffing) when there is only passive resistance.

**Accordingly,**

**IT IS ORDERED** that the Motion for Reconsideration (Doc. 38) is DENIED.

Dated this 5th day of February, 2019.

_____
Honorable David C. Bury
United States District Judge